**EXHIBIT 1**

## **CONFIDENTIAL SETTLEMENT AGREEMENT AND FULL RELEASE**

In consideration of the mutual promises contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. This Confidential Settlement Agreement and Full Release ("Agreement") is made by and among Peterson Dorima ("Dorima"), Kesef, LLC ("Kesef"), and Shlomi Ezra ("Ezra") (Kesef and Ezra collectively being "Defendants") (Dorima and Defendants collectively being the "Parties").

2. **Voluntary Agreement**. The Parties represent and agree that this Agreement was reached through arms-length negotiation in which they were represented at all times by counsel. This Agreement was reached knowingly and voluntarily and that there was no undue influence, overreaching, collusion, or intimidation. Dorima further agrees that this Agreement is in his best interest, and that this Agreement is fair, just, and reasonable.

3. **No Admission; Denial Of Liability**. Defendants specifically deny all liability and deny that any wrongdoing occurred. Accordingly, the Parties understand and agree that the payment and other matters agreed to herein and any joint motion filed in the Federal Court Action are not to be construed as an admission of or evidence of liability or wrongdoing for any violation of the law, willful or otherwise, by any entity or any person and in no way shall be interpreted to render Dorima as a prevailing party under any statute or otherwise. The Parties further understand and agree that neither this Agreement nor any of its terms shall be offered or used as evidence by any of the Parties, or their respective attorneys in this Federal Court Action, in any other action or proceeding; provided, however, that nothing contained in this paragraph shall prevent this Agreement from being used, offered, or received in evidence in any proceeding to enforce, construe, or finalize this Agreement.

4. **Payment**. Defendants shall pay Dorima the sums listed below in full and final settlement of any and all disputed claims between the Parties, including attorneys' fees and costs:

   a. One check made payable to Dorima in the amount of Three Thousand Dollars and No Cents ($3,000.00), representing alleged unpaid wages, subject to an IRS Form W-2 and withholdings required by law;

   b. One check made payable to Dorima in the amount of Three Thousand Dollars and No Cents ($3,000.00), representing alleged liquidated damages, with no tax withholdings and subject to Kesef receiving an executed IRS Form W-9; and

   c. One check made payable to Bober & Bober, P.A. in the amount of Six Thousand Dollars and No Cents ($6,000.00), representing alleged attorneys' fees and costs, subject to Kesef receiving an executed IRS Form W-9.

Defendants shall pay these monies to Dorima no later than twenty-one days after the Court approves this Agreement. Dorima agrees to indemnify Defendants and hold them harmless from any employee-related, but not employer-related, interest, taxes, or penalties assessed against Defendants by any governmental agency as a result of the non-payment of taxes on any amounts paid by way of an IRS Form 1099 to Dorima or his attorneys under the terms of this Agreement. Each party shall bear its own attorneys' fees, expenses, and costs related to the Federal Court Action, except as provided in this Agreement.

5. **Dorima's Release**. Dorima, for himself and his heirs, executors, administrators, successors, personal representatives, or assigns (collectively, "First Party"), does hereby remise, release, acquit, satisfy, and forever discharge Ezra, Kesef, any and all parent, subsidiary, affiliate, or related corporations, and their shareholders or members, parents, subsidiaries, affiliates, predecessors, successors, or assigns, and their attorneys, officers, directors, agents, and employees, past and present, and their heirs, executors, administrators, successors, personal representatives, or assigns (all of which collectively shall hereinafter be referred to as "Second Party"), of and from any claims and all causes of action, contracts, agreements, promises, claims for negligence, fraud and fraud in the inducement, damages, and demands whatsoever, in law or in equity, under state or federal law. This release includes but is not limited to all disputes, claims, liens, injuries, and damages, whether known or unknown, including but not limited to those arising under any contract, tort, federal, state, or local right, fair employment practices, civil rights, employee rights, or any other statute, law, ordinance, or regulation, including but not limited to the Florida Civil Rights Act (Fla. Stat. § 760.01, et seq.), Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Civil Rights Act of 1866, the Americans with Disabilities Act, the Employee Retirement Income Security Act of 1974, the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), the Family and Medical Leave Act, the Fair Labor Standards Act, the Equal Pay Act, the Occupational Safety and Health Act, the Coronavirus Aid, Relief, and Economic Security Act, the Families First Coronavirus Response Act, the Emergency Paid Sick Leave Act, the Emergency Family and Medical Leave Expansion Act, the Worker Adjustment Retraining Notification Act, workers' compensation retaliation (Fla. Stat. § 440.205), other retaliation or whistleblower's claims, the Age Discrimination in Employment Act, or any other statute, rule, regulation, state or local law, or ordinance, and any and all common law claims, including but not limited to any and all claims for physical or emotional distress or injuries, and any and all claims for any and all claims for declaratory or equitable relief, back pay, front pay, overtime pay, any and all claims for compensation, benefits, bonus, commissions, overtime pay, improper or unauthorized wage deductions, monies owed relating to the cost of uniforms or job accessories, unpaid wages, alleged "off the clock" work, alleged "non-tip credit" work or training, liquidated damages, other remuneration, attorneys' fees, costs, or disbursements, or for any other damages, breach of duty, or obligation of any kind or description whether arising in law or equity, which Dorima ever had, now has, or his heirs, executors, administrators, successors, personal representatives, or assigns hereafter can, shall, or may have against Second Party, known, unknown, foreseen, or unforeseen, from the beginning of the world to the date Dorima executes this Agreement. In short, this release paragraph is intended to cover

Doc ID: 030a117895978db86a13efb007cc1c1e106fbe63

any and all claims that First Party may have against the Second Party with no "carve outs" or exceptions.

Dorima agrees and understands that he may have FLSA or other wage and hour claims against Second Party of which, at the time of the execution of this Agreement, he has no knowledge or suspicion, but agrees and represents that this Agreement extends to all FLSA and wage and hour claims against Second Party, whether or not known, claimed or suspected, by Dorima as of the date of this Agreement. Dorima understands and agrees that the released claims include not only claims presently known to Dorima but also include all unknown or unanticipated claims, rights, demands, actions, obligations, liabilities, and causes of action of any and every kind, nature, and character whatsoever, which would otherwise come within the scope of the released claims.

6. **No Joinder Or Participation In Lawsuits**. Dorima agrees to not file, join, or otherwise opt-in to any claims or lawsuits against the Second Party with any court for alleged violations of the Fair Labor Standards Act, the Florida Minimum Wage Act, or any other state or local law relating to the payment of wages, or any other statutory or common law claim arising out of the employment relationship with Second Party for the period when Dorima worked at Kesef. Any failure by Dorima to comply with this condition precedent in whole or in part shall be Defendants' defense to and mandatory grounds for dismissal of any such claims brought by Dorima, which Dorima stipulates shall be the remedy for such failure. This defense is in addition to any defense that Defendants have in regard to Dorima having waived or otherwise released any such claim as a result of this Agreement. Further, this defense is in addition to attorneys' fees and costs Second Party may seek as provided in paragraph 17 of this Agreement. This provision does not prevent Dorima from filing a lawsuit for a breach of this Agreement.

7. **Defendants' Release**. Defendants do hereby remise, release, and forever discharge Dorima from all actions, causes of actions, claims, demands whatsoever, whether or not founded in law or in fact and from all debts, damages, judgments, and claims whatsoever in law or in equity, which Defendants ever had, now have, or their heirs, executors, administrators, successors, personal representatives, or assigns hereafter can, shall, or may have against Dorima, known, unknown, foreseen, or unforeseen, from the beginning of the world to the date Defendants execute this Agreement. In short, this release paragraph is intended to cover any and all claims that Defendants may have against the Dorima with no "carve outs" or exceptions.

8. **Dismissal Of Federal Court Action**. The releases contained in this Agreement are specifically intended to cover but not be limited to all claims that were raised or that could have been raised whether the Parties were aware of them or not brought in the action styled *Peterson Dorima v. Kesef, LLC, and Shlomi Ezra*, Case No. 20-23028-civ-Scola, filed in the United States District Court for the Southern District of Florida (the "Federal Court Action"). In exchange for the consideration given, the Parties shall execute and file with the Court in the Federal Court Action a joint motion for approval of the Agreement and for dismissal with prejudice of the Federal Court Action (with a request that the court retain jurisdiction to enforce the settlement). Defendants shall file the joint motion for approval of the Agreement in the Federal Court Action no later than three business days after the Effective Date.

Doc ID: 030a117895978db86a13efb007cc1c1e106fbe63

9.      **Payment In Full**.  Dorima represents and agrees that upon receipt of the monies identified in paragraph 4 above, he will have been paid in full for all hours he has worked while employed with Second Party.  Dorima further represents and agrees that upon receipt of the monies identified in paragraph 4 above, he has been correctly paid and/or has received all compensation and leave, including without limitation, leave (paid or unpaid), compensation, wages, regular/straight pay, overtime pay, bonuses, commissions, monies owed for alleged "off the clock" work, monies owed for alleged uniforms or job accessories costs, monies owed for alleged "non-tip credit" work or training, and/or benefits to which he may have been entitled to and no other compensation or leave, including without limitation, leave (paid or unpaid), compensation, wages, bonuses, commissions, monies owed for alleged "off the clock" work, monies owed for alleged uniforms or job accessories costs, monies owed for alleged "non-tip credit" work or training, and/or benefits, is due except as provided in this Agreement.

10.     **Injuries; Medicare**.  Dorima declares and represents that as of the date of the execution of this Agreement, he has suffered no on-the-job or work-related accident or injury, occupational disease, or disability, whether temporary, permanents, partial, or total.  Dorima further represents he has not executed any letter of protection or entered into any other agreement that would obligate Defendants to delivery any proceeds under this Agreement to that individual or entity.  Dorima warrants and represents that the proceeds received under this Agreement will be disbursed without being in violation of any letter of protection, lien, or other agreement.  Dorima further affirms that, as of the date he executes this Agreement, he is not a Medicare beneficiary and is not seeking medical expenses in connection with his employment with Second Party.  Dorima agrees to save harmless and indemnify Second Party of and from any all claims, suits, liens, or expenses arising from the treatment of any medical condition of Dorima, which may hereafter be presented by anyone for loss and damages or payment for services provided for the period when Dorima worked at Kesef.

11.     **Confidentiality**.  Dorima and Ezra further agree that neither they nor their attorneys have disclosed, or will disclose, directly or indirectly through other persons, to anyone, this Agreement or its terms, except to consult with legal counsel or for tax or accounting consultation or advice or unless required to do so by court order or subpoena.  Ezra may disclose or otherwise discuss this Agreement and its terms on a business need-to-know basis and advise those that are told that this Agreement and its terms are to remain confidential.  Except as otherwise required by law, Dorima, Ezra, and their attorneys shall not issue any public statements with respect to the Federal Court Action, the settlement, or this Agreement, or otherwise publicize the Federal Court Action, the settlement, or this Agreement, including but not limited to statements on any website or respond to any inquiries by the media, other than referring them to the public record without commenting on the content of such public record.  Dorima also specifically agrees not to contact employees, former employees, or contractors of Defendants for the purpose of suggesting to them in any way (or assisting them in any manner other than as required by court order or subpoena) that they should file a claim of any kind against Defendants.  Nothing in this provision or this Agreement prohibits Dorima from testifying truthfully as to his relationship with Defendants if subpoenaed

to testify in any legal proceeding or before any tribunal. In the event Dorima or Ezra is asked about the litigation by any other person or entity, they may only state, "The Parties reached an amicable resolution of their differences," or words to that effect. This paragraph is in no way waived by the filing of the joint motion for approval of the Agreement in the Federal Court Action. Dorima and Ezra understand that in the event that either breaches this paragraph, then the non-breaching party may file a lawsuit against the alleged breaching party to enforce this paragraph and may seek attorneys' fees and costs as provided in paragraph 17 of this Agreement.

12. **Non-Disparagement; Employment Verification; No Re-hire**. Dorima agrees to not make or cause to have made any disparaging or negative remarks about Defendants. Ezra agrees to not make or cause to have made any disparaging or negative remarks about Dorima. Kesef has agreed to provide a letter that confirms dates of employment and position held, which is attached as Exhibit A. With respect to employment references, Dorima shall direct any employment reference to Courtney Stern, (305) 205-4399, who will verify the information provided in Exhibit A and if asked if Dorima is eligible for rehire), will respond with words to the effect that it is company policy to provide no other information. Dorima acknowledges that because of circumstances unique to Dorima including, but not limited to, irreconcilable differences with Defendants, Dorima is not qualified to hold any position with Second Party, now or in the future and, therefore, shall not apply in the future for employment with any Second Party in any capacity, including directly, through a temporary employment agency, or in a contractor or subcontractor capacity. Second Party agrees that should Dorima apply for employment or become employed by any of the Second Party, such application or employment shall not constitute a breach of this Agreement. Rather, the remedy is that Second Party shall have no obligation to hire Dorima or otherwise shall have the right to immediately decline Dorima's application or terminate Dorima's employment. This is a negotiated, non-retaliatory settlement term.

13. **Severability**. If any provision of this Agreement is held to be unenforceable, then this Agreement will be deemed amended to the extent necessary to render the otherwise unenforceable provision, and the rest of the Agreement, valid and enforceable. If a court of competent jurisdiction declines to amend this Agreement as provided herein, the invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of the remaining provisions, which shall be enforced as if the offending provision had not been included in this Agreement.

14. **Entire Agreement; No Oral Modifications Or Representations**. Dorima acknowledges that in deciding to sign this Agreement, Dorima has not relied on any promises, statements, representations, or commitments, whether spoken or in writing, made to Dorima by any representative of Defendants or any other person, except for what is expressly stated in this Agreement. The Parties agree that this Agreement sets forth all the promises and agreements between them and supersedes and terminates all prior and contemporaneous agreements, understandings, inducements or conditions, expressed or implied, oral or written, between them. This Agreement may not be changed or altered, except in writing signed by the Parties.

15. **Binding Effect**. This Agreement shall be binding upon and shall inure to

Doc ID: 030a117895978db86a13efb007cc1c1e106fbe63

the benefit of the Parties' representatives, agents, successors, assigns, heirs, attorneys, affiliates, and predecessors.

16. **Choice Of Law; Venue**. Florida law shall apply to the interpretation and enforcement of this Agreement. Any dispute over this Agreement shall be resolved by in a state or federal court in Miami-Dade County, Florida, or the Southern District of Florida.

17. **Attorneys' Fees and Costs**. If any party breaches this Agreement, or any dispute arises out of or relates to this Agreement, then the prevailing party shall be entitled to recover reasonable attorneys' fees and costs, whether incurred before suit, during suit, or at the appellate level. The prevailing party shall also be entitled to recover any attorneys' fees and costs incurred in litigating the entitlement to attorneys' fees and costs, as well as in determining or quantifying the amount of recoverable attorneys' fees and costs. The reasonable costs to which the prevailing party is entitled shall include costs that are taxable under any applicable statute, rule, or guideline.

18. **Consultation With Counsel**. The Parties acknowledge that they have had the opportunity to freely consult with attorneys of their own choosing and are fully aware of their rights, responsibilities, and the consequences of the execution of this Agreement prior to signing. Dorima further acknowledges that this waiver of rights is voluntary.

19. **WAIVER OF JURY TRIAL.** IN THE EVENT EITHER DORIMA OR DEFENDANTS FILES A LAWSUIT RELATING TO OR ARISING OUT OF THIS AGREEMENT, THE EMPLOYMENT RELATIONSHIP, OR EVENTS ARISING AFTER THE EMPLOYMENT RELATIONSHIP, THE PARTIES AGREE TO WAIVE THEIR RIGHT TO A JURY TRIAL, AND FURTHER AGREE THAT NO DEMAND, REQUEST, OR MOTION WILL BE MADE FOR A JURY TRIAL.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed on the last date set forth below.

PETERSON DORIMA

_____
Print Name: Peterson Dorima

Date: 10 / 27 / 2020

SHLOMI EZRA

_____
Print Name: Shlomi Ezra

Date: 10-27-20

**REMAINING SIGNATURE ON NEXT PAGE**

6

KESEF, LLC

By: _____

Name: Courtney Stern

Title: Manager

Date: 10-27-2020

7

Doc ID: 030a117895978db86a13efb007cc1c1e106fbe63

# **EXHIBIT A**

Doc ID: 030a117895978db86a13efb007cc1c1e106fbe63



October 15, 2020

To Whom It May Concern:

This letter shall confirm that Peterson Dorima worked at Soho Asian Bar & Grill from July 2013 through April 21, 2020 (with a brief break in service in 2014). During this time, Mr. Dorima worked as a cook.

Sincerely,

Shlomi Ezra, Manager
Soho Asian Bar & Grill
20295 NE 29th Place, Suite 200
Aventura, Florida 33180

Doc ID: 030a117895978db86a13efb007cc1c1e106fbe63